# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

JOSHUA MATTHEW STOCKTON                                                        PLAINTIFF
ADC #169885

V.                            No. 4:23-CV-682-BRW-JTR

CANNON, Sgt., Night Shift,
Pine Bluff Complex, ADC;
HOWELL, Cpl., Maintenance
Supervisor, Pine Bluff Complex,
ADC; BARRON, Sgt., Pine Bluff
Complex, ADC; BOULDEN,
Deputy Warden, ADC, Pine Bluff;
MARSHALL REED, Chief Deputy
Director, ADC; and JOE PAGE, III,
Superintendent                                                                 DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I. Introduction

Plaintiff Joshua Matthew Stockton ("Stockton") is currently incarcerated in the Barbara Ester Unit of the Arkansas Division of Correction ("ADC"). On July 21, 2023, Stockton filed a *pro se* § 1983 Complaint alleging that Defendants Cannon, Howell, and Barron (collectively, "Defendants") violated his constitutional rights. *Doc. 2*. The incidents giving rise to his claims took place while Stockton was housed at the Pine Bluff Unit of the ADC.

On September 7, 2023, the Court screened Stockton's Complaint pursuant to the Prison Litigation Reform Act ("PLRA") and found Stockton's allegations failed to state a claim on which relief may be granted. *Doc. 5*. The Court gave Stockton the chance to file an Amended Complaint to cure the defects in his pleading. *Id*. Stockton filed his Amended Complaint on October 4, 2023. *Doc. 6*. The Court will now continue screening Stockton's claims.

II. Discussion

Before Stockton can proceed with his claims, 28 U.S.C. § 1915A requires the Court to screen his Complaint, which "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added); *see also* Fed. R. Civ. P. 8(d) (allegations must be "simple, concise, and direct"). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions

devoid of further factual enhancement" are insufficient to plead a plausible claim. *Iqbal*, 556 U.S. at 678. Finally, a prisoner's § 1983 Complaint must allege facts sufficient to show how each defendant was *personally involved* in the alleged constitutional wrongdoing. *Id*. at 676 (emphasis added).

### A.     Stockton's Amended Complaint

In his Amended Complaint Stockton brought claims against Sergeants Cannon and Barron, Corporal Howell, ADC Chief Deputy Director Marshall Reed, Superintendent Joe Pate, III, and Deputy Warden Boulden in their personal capacities only. *Doc. 6 at 1–4*. Stockton's claims in this case arise out of allegedly faulty wiring in a Pine Bluff Unit water fountain that caused Stockton to suffer an electric shock and injuries. Stockton makes related deliberate indifference to serious medical needs claims, along with failure to train and corrective inaction claims.

Stockton alleges that a water fountain in the Pine Bluff Unit presented a substantial risk of serious harm during the period of March 7, 2023 and March 23, 2023, and that Cannon, Barron, and Howell were deliberately indifferent to that risk. *Id. at 5*. According to Stockton, the fountain had "faulty electrical" that caused it to shock him. *Id. at 6*. Stockton was first shocked on March 7, 2023. *Id. at 5*, *23*. That same day Stockton attempted to file an emergency grievance about the water fountain, but Cannon refused to sign the emergency grievance. *Id. at 23*. Instead, Cannon instructed Stockton to give the grievance to Barron. *Id. at 8*.

On March 10, 2023, upon learning of the faulty water fountain, Barron called Maintenance to have the water fountain inspected. *Doc. 6 at 7*. Howell, who was responsible for Maintenance, "did respond to the maintenance requests" on a few occasions. *Id. at 13*. Stockton acknowledged the fountain did not always shock the user. *Id. at 13*. He also acknowledged that when a shock actually occurred, sometimes the shock was only mild. *Id. at 13*. Using the water fountain, then, did not always result in a shock, but when it did the shock ranged from mild to severe. When Holcomb checked the fountain, Holcomb did not find anything wrong it. *Id. at 24*.

Stockton complains that neither Cannon nor Barron took him to medical after learning he had been shocked. *Id. at 7, 8*.

Stockton was shocked a total of four times while using the fountain between March 7, 2023 and March 23, 2023. *Doc. 6 at 23*. The fourth shock occurred on March 23, 2023, and the water fountain was removed that same day. *Id.* Stockton claims the fourth shock caused severe injury to him, including permanent damage to his right hand, mild paresthesia, tingling of the lips, and dry mouth. *Id. at 11, 23*. According to medical records from a March 23, 2023 wellness check at 3:56 p.m., Stockton "appeared to be in no acute distress, there were no burn markings visible, and [Stockton] [was] able to move [his] fingers and arm without limitation." *Id. at 23*.

Stockton maintains Page, Boulder, and Reed failed to train subordinates and failed to take corrective action against subordinates in connection with the faulty water fountain. *Id. at 9, 10, 12, among others*. Stockton seeks damages. *Id*.

**B.    Stockton's Amended Complaint Fails to State a Claim on Which Relief May be Granted**

**1.    Conditions of Confinement**

Stockton alleges that because Cannon, Barron, and Howell were on notice of the problem with the water fountain, the fountain should have been removed immediately or designated as out of order. *Doc. 6 at 6*. Stockton alleges Cannon, Barron, and Howell violated his rights by ignoring the risk to him and not removing the fountain until March 23, 2023.

To state a viable conditions of confinement claim, Stockton must allege that: (1) objectively, he was subjected to conditions within the prison that created a substantial risk of serious harm to his health or safety; and (2) subjectively, Defendants were deliberately indifferent to the known risk of harm posed by those conditions. *See Davis v. Oregon County, Missouri*, 607 F.3d 543, 548–49 (8th Cir. 2010); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

Stockton brought these same claims against Howell in an earlier lawsuit, *Stockton v. Page, et al.*, 4:23-CV-582-JM (E.D. Ark. filed June 20, 2023). In that case, United States District Judge James M. Moody, Jr. adopted in its entirety the Recommendation submitted by United States Magistrate Judge Jerome T. Kearney

5

and dismissed Stockton's Complaint for failure to state a claim on which relief may be granted. In connection with Stockton's conditions of confinement claim it was noted that: Stockton acknowledged the water fountain did not result in a shock after each use; after Stockton grieved the issue, Howell was sent twice to check the fountain; Howell found the fountain to be working properly; and the fountain ultimately was removed on March 23, 2023, just 16 days after Stockton's first grievance. *Id. at Docs. 4, 7*. Judge Moody agreed that the facts did not indicate that the defendants knew of a risk of harm to Stockton but ignored it. Rather, the facts Stockton pled showed that the defendants were attempting to diagnose and remedy the problem. Judge Moody concluded that, without more, Stockton's allegations sounded in negligence, which is insufficient to support a cause of action under § 1983.

The Court may take judicial notice of the proceedings in Stockton's earlier case because they are directly related to the issues here. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

This time around Stockton omitted from his original pleading certain allegations on which Judge Moody relied in finding Stockton failed to state a viable conditions of confinement claim. For example, Stockton initially failed to acknowledge here that: the water fountain did not render a shock after each use; Howell inspected the water fountain twice; and the water fountain was removed

sixteen days after Stockton's first grievance. In his Amended Complaint, however, Stockton includes these details.

The fact that the water fountain did not consistently shock its users, and at times shocked the users only mildly, undermines Stockton's claims. And Stockton apparently did not report any alleged shock incident to medical until March 22, 2023, two weeks after the first shock on March 7, 2023. *Doc. 6 at 24*. Under these circumstances, it is questionable whether the water fountain presented a substantial risk of serious harm to Stockton. And even if it did, nothing establishes any Defendant was subjectively aware of the harm but ignored it. When Cannon learned Stockton had been shocked, Cannon directed Stockton to give his grievance to Barron, who immediately asked Maintenance to check the water fountain. This does not indicate deliberate indifference. Maintenance was asked at least twice to check the fountain. Holcomb checked the water fountain twice and found nothing wrong—which is consistent with Stockton's explanation that the fountain did not always render a shock when used. Perhaps Holcomb's inspection was negligent, but negligence, even gross negligence, is insufficient to establish liability under the Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 835, 838 (1994) (an "official's failure to alleviate a significant risk that he should have perceived but did not ... cannot under our cases be condemned as the infliction of punishment" under the Eighth Amendment); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849

(1998) (holding that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process").

When Stockton was shocked the fourth time and claimed to be severely injured, the water fountain was removed that very day. Again, this does not indicate deliberate indifference. And even if there was a violation, the Court is not aware of clearly established law that would have put any Defendant on notice that his or her conduct was unlawful.

### 2. Deliberate Indifference to Serious Medical Needs

Stockton alleges Cannon and Barron failed to offer him medical care after he was shocked. *Doc. 6 at 7, 8*. To plead a viable inadequate medical care claim against Cannon and Barron, Everett must allege facts establishing that: (1) he had objectively serious medical needs; and (2) Cannon and Barron actually knew of, but deliberately disregarded, those needs. *See Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018).

Stockton says he was in pain after being shocked when he used the water fountain. This statement alone does not establish that Stockton suffered from a serious medical need. "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Schuab v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). Stockton asserts that

"informing a state official of an injury sustained is a request for medical attention." *Doc. 6 at 7*. The inquiry, however, turns on the nature of the injury, and Stockton has not provided detail about how he was harmed on March 7. Nothing in Stockton's pleading indicates the severity of his pain or the effects of the shock. For example, Stockton did not allege that he was visibly burned from the shock or presented any other condition that a layman would easily recognize required medical care. Stockton himself did not report the March 7, 2023 shock to medical until March 22, 2023. *Doc. 6 at 24*. When Stockton was seen by medical for a wellness check on March 23, 2023, Stockton was able to move his fingers and arms without limitation and no burn marks were visible. *Id. at 25*. All of this considered, Stockton's allegations do not indicate that Cannon and Barron should have known Stockton needed medical care.

Further, Stockton has not pled facts demonstrating Cannon and Barron were deliberately indifferent. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Stockton has not alleged that Cannon and Barron intentionally denied or delayed access to medical care. Stockton complains that Cannon and Barron did not affirmatively offer him medical care. But because Stockton demonstrated no serious

medical need, Cannon and Barron were not on notice medical attention was necessary.

### 3. Failure to Train and Failure to Take Corrective Action

Stockton alleged corrective inaction and failure to train against Page, Reed, and Boulden.

Liability in an action brought under 42 U.S.C. § 1983 is based on an individual's own actions. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). It follows that supervisor liability in § 1983 actions is limited. A supervisor incurs liability only if he is personally involved in a constitutional violation, or when his corrective inaction constitutes deliberate indifference to the violation. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

The same deliberate indifference standard applies to a failure-to-train or supervise claim. To succeed on a failure-to-train or supervise claim, a plaintiff must show that the supervisor:

> (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]

*Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (internal citation omitted).

Here, the only unlawful incident Stockton describes is the same incident on which his failure to train and corrective inaction claims are based. Stockton cannot

establish corrective inaction or failure to train because each of these claims demands some showing of an existing knowledge of *previous* unlawful acts by a subordinate. In other words, previous unlawful conduct puts a supervisor on notice; without the notice, there is no deliberate indifference. As such, Stockton's corrective inaction and failure-to-train or supervise claims fail as a matter of law.

### III. Conclusion

Stockton's Amended Complaint fails to contain sufficient factual matter to state a viable § 1983 claim and should be dismissed, without prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1. Stockton's Amended Complaint (*Doc. 6*) be DISMISSED, without prejudice, for failure to state a claim on which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g); *see Gonzalez v. United States*, 23 F.4th 788, 789 (8th Cir.), *cert. denied*, 142 S. Ct. 2837 (2022).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 16th day of October, 2023.

_____
UNITED STATES MAGISTRATE JUDGE